May it please the court, good morning, I'm John Keating, appearing on behalf of the Appellant Eric Drew. Keeping a view of the force, despite the considerable number and complexity of the treaties in this file, I want to give you my quick list of the top five concept and policy reasons why this district court decision needs to be corrected. And I might just save you a little time echoing Judge Smith. I'd go for the legal rather than the policy if I were you. Thank you, Your Honor. Amen. I couldn't have said it better. I'd like to reserve four minutes for rebuttal. I'll try to watch your time. Thank you. This district court decision is determined primarily on the resolution of factual questions of reasonableness, inherently the province of a jury. Second on my list. The result is that we have legal construct counterfactuals that any jury would likely define inconsistent with reality. With regard to the primary issues, which are the bank conduct in 2005, the consumer is construed to... Which bank are you talking about? Bank of America, failure to investigate throughout 2005, culminating in the account finally being deleted less than one year. Are we talking Chase or are we talking FIA? FIA. That's what I thought. Okay. I'm just trying to make sure. Yes. I'll refer to FIA for you guys and Bank of America. Anyway, that account was closed, finally deleted less than one year before the filing. Yet we have a legal construct counterfactual that somehow this consumer discovered that and all of the other 2005 conduct of the bank before they even occurred. He's construed to have learned about them in 2004, even though they didn't even happen until 2005. Then, second, with regard to the 2004 conduct, he is construed to have somehow understood the proprietary internal conduct of this bank in failing to reasonably investigate the initial report to them of the identity theft account. He's construed to have understood that proprietary information almost a year or six months before he even knew that it was still being reported. He first knew that it was still being reported in January 2005. That's his testimony and that's what the Court is required to consider, and it's not dealt with. Third, on that aspect, Chase Bank is construed to somehow have done an investigation into the credit reporting a full month, month and a half before the dispute even arrived to them by virtue of merely closing the account. Now, my third key point is that this decision dangerously confuses the billing practices of these banks covered under the Fair Billing Act with the credit reporting duties under the Fair Credit Reporting Act, separate universes of conduct of these banks controlled by separate statutes. And this decision would suggest that the bank's initial handling of these accounts, these identity theft accounts, somehow triggers the statute of limitation or is construed to give us an investigation with regard to the later reporting. We're not really here on a statute of limitation problem with Chase, are we? No, sir. So just to keep them separate, the Chase issue is the reporting of the address and the lost versus stolen issue, correct? And failing to do anything in response to the dispute because if they had done so, had complied with the requirement to contact Mr. Drew or contact the other agencies or conducted an investigation, surely they would have solved the problem and it would have led to solving some of the other problems in the case. If we go to the Bank of America FIA claim or problem, isn't it true that your client informed the Bank of America or FIA by telephone about this account in April of 2004? Yes, Your Honor. And isn't it true then that he received collection calls from FIA and from or Bank of America concerning this account in April or May of 2004? Actually, I may have misstated that. What happened is that he got bills and he called to tell them that the bills were not his, the account was not his, and understood that he was doing that to stop this because he was in hospice, he was told that he was dying, and he was trying to clear it all up. Well, and the district court gave him some equitable tolling based on that, did she not? Yes, Your Honor, for I believe close to four or five months. Right, 5.5 if I saw it correctly, 5.5 months. Thank you, Your Honor. So what is the time he would have had to know based on the 5.5 months in your mind? Well, the court articulated that to be that he discovered on May 6th and he would have had to, by my calculation, he would have had to know sometime in June or early July. We know that he's gone from July 14th on. Well, so we're really arguing about whether what he knew or did not know in April and prior to the May date was enough, correct? Yes. To make the statute of limitations be against him? Whether it's enough to trigger him to conduct an investigation and somehow get the information sufficient to know enough of things within a month and a half. So I thought part of the issue is, you know, there was one investigation, and then is it ongoing or is there a new investigation? And the question I have, which will be the same question for the FIA counsel, is how he knows there's a problem, but what does he know or not know that would trigger him at that point, you know, to have the statute begin to run? This is a jury question. It's what a reasonable person would do trying to correct the billing. Is a reasonable person going to go and not trust the banks and think that they have to litigate and somehow determine what the proprietary information is prior to the time that the account is even closed? Drew was trying, as well as he testifies, the only really testimony we have on this is that he was dying and he was just trying to stop the billing. And that's all he cared about. He didn't give a hoot about his credit. And he didn't even know that there was a credit reporting problem until the following January. With regard to your court's question. I mean, I guess you're saying that when you're trying to fix a problem, you're not – the statute isn't running if you don't know what the underlying nature of the problem is. Yes. And, you know, looking at the Merck – the Supreme Court analysis in Merck as to what is a triggering aspect of these storm warnings, Merck dealt with looking for the triggering aspect as to the specific knowledge necessary to bring the claim. In that case, scienter. Not whether generally those people knew something was wrong. Clearly, in that case, there was a big problem. They knew there were lawsuits about it. They knew there was misrepresentation. And the Supreme Court didn't think that just because the plaintiffs knew there was misrepresentation, therefore, they had a duty to find the scienter. Rather, the court looked and said, is there specific information with regard to scienter? Drew could not have received specific information with regard to the reasonableness of that March – March 2004 automatic verification because he didn't even know about it. Let me change your emphasis just a little bit as to the Chase Bank. It seems to me, what exactly did you move for in the district court as to the Chase Bank? Because it seems to me that you're in front of us with a different idea than the district court really ruled on. The district court ruled on whether there was an investigation or a sufficient investigation and all of that. But it seems to me that you approach us with an appeal not just on the investigation but what they should have done otherwise. And I didn't think that the district court ever commented about that. Your Honor, I'm glad you asked that question because it's a confusing point. The statute requires various actions. Yeah, I looked through it. It has A, B, C, D, E. It seems to me the district court did all of her work on A and B and didn't do much on E. And yet you come in here looking about E, and I'm wondering why the district court didn't talk about E. Didn't she take it up with her? I attempted to, Your Honor. It was a motion for reconsidering, consideration which the court overruled her prior decision and did not address the other aspects. I tried to lay that out in the briefing to the district court, but it just wasn't considered. So let me just ask. It was considered. In your view, the first time around, I mean, I guess obviously this flipped. Yes, Your Honor. So the first time around you win, correct? Right. And did that include E or was it a broader, can you tell whether that was actually considered the first time around? Because then you lose on the motion. You know, there's a motion for reconsideration, and the judge takes another look at this. Well, the court didn't rule on E at any time, I believe. I think it was largely just not addressed in any of the rulings. If I recall. Why didn't you come up with something, with a motion for reconsideration or something then in front of the district court? Because it seemed to me she just missed your case and it was all on investigation, and yet you now approach me with something else. I approached the district court on that. She clearly was ruling only on, construed the statute to apply only as to investigation. I believe we talked about that at hearing, and I thought at the time that the court understood that and the ruling over a year later did not address it. The interesting thing about, to me, about your question about the interplay of these various provisions is that even if we're just dealing with investigation, any investigation by Chase into their credit reporting would have resulted in them deleting the account. No bank would want to have just crazy information on credit reports, and if they bothered to look at all in an investigation, they would have ended up doing the other requirements, like contacting the consumer that TransUnion asked them to do, like notifying the other credit agencies. The whole intent of the statute is twofold. One, to protect consumers, and two, to allow reliability of the system. What Chase does defeats the system. And I note that I'm down to a minute. Kagan. I'd rather we do want to hear from Judge Benitez because I know he has a question for you, so why don't you answer that and then you can sit down. I do have a question. I'm sorry. I may not really be understanding your argument. But basically, your position is that because of the fact that Chase listed the account as being lost or stolen, they didn't conduct an adequate investigation. Is that fair? My position is that they never conducted an adequate investigation, and as a result, they didn't correct their mistake. Right. So in other words, they didn't comply with Section E, which says that if you do an investigation and you find that the complaint is well taken, you either modify the item of information, you delete the item, or you permanently block the reporting information. And here, none of that happened. What happened was that it was listed as lost or stolen. Yes. And most importantly, it wasn't listed that way to the CRA that challenged it, but only to the other CRAs. So you get inconsistent credibility. And then one last question. I'll let you sit down. That included the wrong address? I mean, it has the thief's address. Well, that's – Is that also included as part of this? Almost, Your Honor, if I may say. Okay. It – what happened is the thief's address was deleted by Equifax early on. And what happened is when Chase went to finally delete the account, when they finally noticed it, when Drew complained again, when Drew found out about it in 2005, at the point that they went to delete the account, they provided the false address again. Okay. So it was newly arising in 2005. So they fixed it with a mistake. Yes. And it created a whole other set of problems. And the now address gets sent on to the secondary credit agencies, and it's still on this record. Still? Well, never mind. It's in the record, whatever's in the record. Right. Okay. So we'll hear from the banks, please. May it please the Court. I'm George Weichart representing Chase Bank USA, and I'm going to divide the appellee's time equally with counsel for FIT. And I'm going to address two issues, the FCRA claim and the leave to amend claim, which Mr. Keating didn't address. Now, as for the reasonable investigation, I think it's very important to understand that Chase was very proactive in this investigation that it conducted. It actually noticed that there was a recent change of address in Mr. Drew's credit record, and it sent a letter to him saying, did you open this account? And doing that was above and beyond the call of duty. No statute or rule of law requires that you did that. They did that of their own initiative. And he responded to the letter and said, no, I didn't open that account. That all happened in November of 2003. Just out of curiosity, counsel, why did they do that? It's just they were just being prudent. Somebody was on the ball and noticed that there was a recent change of address, so they said, why don't we check just to make sure that this is a valid account. So they got a letter, they got a call from him, and he said, I didn't open the account, and they accepted his word for it, and they immediately closed the account. Now, I submit that's the most prompt and reasonable investigation you can do, is take his word for it. But they didn't close the account and say block it. They reported it lost or stolen. Yes. And, Your Honor, Mr. Drew got exactly the same benefits he would have gotten if the account had been deleted, because Mr. Drew's own expert testified specifically that when an account is reported as lost or stolen, that means, number one, that the consumer is not responsible for it. It means that no charges will be accepted for the account, on the account. It means that it's been closed. And it also means that it will have no negative effect on Mr. Drew's credit report. No effect at all. It's just like it wasn't there. But that's the financial aspect of it. Sotomayor, does this statute also permit other claims under the statute beyond financial? Emotional damage. Emotional damages. It does, but. Well, I'm not saying one way or the other. I'm just trying to parse out the legal. So, I mean, I hear you on the financial, and if he raises a claim on the emotional and we still have this account, we've got the thief's address listed there, and stuff is still going there, I don't know what the legal result is, but why wouldn't there at least be a factual issue? Well, he's got to prove a violation first before he can get emotional distress damages, of course.  And let me emphasize another fact, because the judge specifically found that the issue was raised whether she addressed subpart A. Well, she did. She found that this account was not reported on Mr. Drew's credit report after February 2004. It wasn't there. There was no evidence, admissible evidence, that it was ever reported after that date. So that account was not on his credit report after February 2004. And as far as the address is concerned, you know, Chase has to get, under the FCRA, they have to get a, what they call an ACDV. It's a notice of a dispute from a credit reporting agency before they are required to remove something from their records. Well, they never got an ACDV saying, oh, please, please delete the address from the credit records. The only ACDV conceivably that they got was back in January, and that just said that the account was fraudulent. It didn't say anything about deleting the address. That address was already on the account in the credit records when Chase opened it, because that's the way it was. But if the address was true fraudulent, why would they list the address in the first place? I mean, if it's fraudulent, it's fraudulent, right? But, you know, that was the – first of all, that was the address that was already on the account when Chase opened it, and when you – the testimony of Drew's expert was that when you correct an account. He said he didn't. That's not his account. I mean, you magnanimously asked him, did you open this account? He says, no. So now somehow this account takes on its own life. And that's where I'm having a little trouble. It, like, takes on a life of its own apart from him and apart from the bank somehow. Well, it doesn't, because there's absolutely no evidence in the record that this address ever caused the opening of any other fraudulent account or any other damage – any other possible damage to Drew. But again, you're talking financial. He's arguing not just financial, but other emotional damage. And this account, if we dismiss on summary judgment, he loses the chance to suggest that he has that. We're not saying he has it, but he loses the chance. I mean, TransUnion notified Chase and deleted the Chase account. That was in January. Sent the same letter to him about the Bank One First USA account in January. Plaintiff informed Chase the Bank One account was fraudulent in January. Now, I appreciate – I don't know whether we can get the old Republic stuff in or not, and I know what the court did. But in February, plaintiff complained again. And not until then did Chase do anything about blocking the account. Then after that, it was re-reported, the identity thief's Seattle address as the plaintiff's. And in fact, in October, sent a letter to the thief's address with the account number. Well, there's no – there's – Mr. Drew didn't – I'm emotional. We're talking emotional. There's no evidence that Mr. Drew even knew about that until this lawsuit was filed. So that couldn't have caused him any emotional distress, this letter that went out in October 2005. And I think Mr. Drew himself and his counsel understood that you have to complain about each part of the credit report, okay? There are three parts to this credit report. There's the reporting of the account. There's the reporting of the inquiry. And then in a very different place in the account, there's the reporting of the address. And the only ACDV that Chase ever got, they did get one on the inquiry and they acted on that promptly and removed it, but they never got one on the address. And as a matter of fact, Drew's own expert testified that when you – when you report an account, when you correct an account, you have to report it under the address that it was originally open so that the credit reporting agency will be able to determine which account it is. So I think the address issue is a red herring, and I think the fact that there was never any ACDV received on that is – is dispositive here. I see that I have no – You're back down to your colleague's time. I just respectfully say that I request that the Court affirm the judgment below. Thank you. Good morning, Your Honors. I'm Zaria Jal Torosian for FIA. The FCRA claim alleged in the complaint is based only – I think it's important to get this clear right off the bat. It's based only on FIA's failure to investigate in response to a notice, this ACDV, that FIA received from TransUnion in March 2004. FIA's summary judgment motion was directed at the claim that was alleged. He alleged a 2004 notice, a failure to investigate in response to that notice. On the 2005 ACDV-slash-notice issue, there is the number 2005. The year 2005 appears nowhere in the complaint. He does not allege a claim for failure to investigate, and that's what the claim is based on, for any failure to investigate that occurred in 2005 in response to a 2005 notice. The only allegation with respect to notices that were subsequent to the one that my client investigated in March 2004 is in, I believe, paragraph 245 of the Corrective First Amendment complaint, where the plaintiff says, or makes some reference to, retransmitted disputes and a failure to reinvestigate. So the only relevance to the 2005 notices is whether they re-triggered or extended the statute of limitations. Well, let's not talk about the re-trigger. Let's go down to the first and not the re-trigger. It's my understanding, and the facts are as I understand it, that FIA gets a letter, verifies the complaint account in March. The plaintiff calls FIA by telephone about the fraudulent account in April. The plaintiff gets collection calls from FIA concerning the account in April and May. And then, finally, the plaintiff calls the FIA in May, May 3, and says, what's going on? And FIA says an investigation has begun but could not close the account pending investigation. If that is so, how could the statute have ever run, given that we're going to give this person tolling? Okay. I think that's a question of equitable stop. There are two questions. Well, the judge gave them equitable tolling back to May, right? The judge gave them equitable tolling based on medical incapacity from July to December 2004. Right. The question, the question whether he was entitled to equitable estoppel based on representations by FIA is a separate legal question. Well, right. But how it really goes to, you know, if you call somebody up and you say, hey, I've got this problem. I say, you know, we're investigating. You may well be investigating and your investigation may be perfect, but how would I know that I might have a problem with your investigation at that stage? I mean, you know, he otherwise you'd have people filing lawsuits willy-nilly because the minute that you know there's an investigation, you better think about filing your lawsuit. There's no evidence as to how any representation by FIA in July 2004 prevented plaintiff from filing a lawsuit, because even though FIA closed the account in July 2004, it still continued to report the account. But, counsel, I think if I understood Judge McCune's question, what she's asking you is, okay, so if you're told that there's an investigation pending, why would you want to go file a lawsuit? Wouldn't you, in essence, be filing a lawsuit prematurely? You might be filing a lawsuit unnecessarily. I mean, isn't that really the point, is why would you want to do that? Why does that kick off the statute of limitations? Yeah. Our position is the statute of limitations was triggered in April and May 2004, because by that time, you have to remember, by that time the plaintiff knew he had there were several accounts that were open in his name. Right. He had disputed those accounts with various credit reporting agencies, and various banks had closed the accounts. But he still continued to receive collection calls from FIA. Now, plaintiff knew at that time of the facts regarding his injury. The plaintiff did not have to know that he had a cause of action or relief for a claim. Well, but what's his, what would he file suit? So along comes June 1. What's his claim? Failure to, well, he would have a cause of failure to investigate claim under the FCRA. He filed a failure to investigate claim. You guys would have been in court in 25 seconds saying this is premature. We're still investigating. How can he have a failure to properly investigate when we're in the middle of this? We plan to have our report out in 6 weeks. Motion to dismiss granted. I believe the statute gives the Furnisher 30 days to start and complete the investigation. The March, but the report that we received or the notice that we received from TransUnion was in March. So by the time June came around, we had already, the failure to investigate had already occurred. The statutory violation allegedly had already occurred. How does he know that? How does he know that? How does he know that? He does not have to know that there was a statutory violation in order to sue. He simply has to know of the underlying injury. Consumer is never going to know that there was a failure to investigate, because as counsel mentioned, the consumer is never going to know of the bank's internal investigation procedures. All the consumer knows is I have an account open in my name that's fraudulent. My identity was stolen. And this bank still. Sotomayor, I think your bank would regret that interpretation of the statute, because basically any time there is the slightest whiff of any problem, basically you're saying they can file a lawsuit and it shouldn't be dismissed. No. I'm not saying that. What I'm saying is that when the consumer is aware that a dispute that the consumer reported has not been resolved in their favor, and Mr. Drew was certainly aware of that by April and May of 2004 when FIA kept demanding that he pay the charges on the account, by that time his cause of action accrued. He didn't file his complaint until December 2006. That's two and a half years later. Even if you give the six-month holding credit, it was three or four months after the statute had expired. So you're saying that even though you had an open investigation pending, Mr. Drew should have filed his lawsuit earlier than he did, right? The – well, Mr. Drew's cause of action accrued in May 2004. So yes, he should have filed his lawsuit before he filed it, even though you still had an investigation pending. Yes. And if he had filed that lawsuit, then you're saying he would have prevailed as a matter of law. He would have prevailed. Well, the question of whether the investigation was reasonable or not is a separate issue. If you're still sending him notices, how can it be that he didn't prevail? Well, as we pointed out in our brief, in order to be entitled to tolling based on estoppel, Mr. Drew has to show why he waited as long as he did in order to file the complaint. It's not sufficient merely to say, I was told the investigation was pending, but without having any evidence as to how that caused him to forbear filing the lawsuit until past the limitations period. And just to be precise, so I can go back and look at the record carefully, your position is that the statute of limitations would begin to run on May 3? At the very latest. Well, is there an earlier time? I mean, it matters. Well, the district court found it was May at the latest, but you could argue it ran in April because by that time he knew that the account wasn't closed and it was continuing to be reported. Okay. He knew the facts that he arrives to claim under FCRA. He doesn't have to know that he has a claim for relief under FCRA. Of course not. He's not a lawyer. I would refer the Court to the Lukowski decision on that point, Ninth Circuit decision 535S3, 1044. Your time has expired, so if you would wrap it up. We're familiar with that decision. It's been cited. Unless there are any questions, I'll submit. All right. Thank you. Do you have some rebuttal time? Yes. I request four minutes. We ran out of time, Your Honor. You have a minute. Unless the panel has questions, you have a minute to respond. Counsel's posture as to the trigger of the statute of limitations not only would be inconsistent with what the business community would want, but it's also inconsistent with what the Supreme Court says in Merck, that you need to know the elements of the cause of action to trigger the statute under constructive discovery. It is important to understand that that investigation, that internal billing investigation starts on May 2nd or 3rd. No jury could find that a reasonable people would find it defective because it hadn't been completed two days later. No. The other important thing about that is the way the system works, that you close an account and only when the account is closed is anyone going to be effective in getting them to take it off the record. If Bank of America was still billing it, a reasonable person, a jury may find a reasonable person wouldn't even worry about his credit report. Your argument in 2005 that all those violations weren't part of the case, you know, we've cited all the times that they briefed it. That's such a fact-intensive thing. They brought motions in limine on it. There are days of deposition, motions. It can't be assumed just on their representation that it wasn't there. So if you're honest, you need additional stuff put into the exit for record to evaluate that. No, no. We have the whole record is before us. If we want something additional, we'll ask both parties. If I could interrupt you for just a second. I do have a question. Let me pose it to you this way. Okay. So you complain about the fact that there's an account that's been opened and that's fraudulent, right? 30 days goes by. You don't get a notice that the account has been closed, but instead what you're getting is you're getting notices that say, hey, this account's open and you owe money on it. Okay? Wouldn't a reasonable person conclude from that that the investigation was resolved and it was resolved against you rather than in your favor? Otherwise, they wouldn't be sending you these letters, would they? I think, having tried this case, a set of things, I think a reasonable juror would understand that most people are clueless. Mr. Drew's testimony is that he had no idea and he did not know that when he filled out his affidavit to TransUnion that, yes, this account also is bad, that that is triggering some arcane statutory procedure that he doesn't know about. He gets no notice about it. He understands, because that's what happened before, that he calls the CRA, says these accounts aren't mine, and it's taken care of. That's what happened with all the other accounts. Thank you. I'd like to thank all counsel for your argument this morning. A lot of paper, and the whole record is before us, so we have an opportunity to look both at your briefs and the record. At this stage, the case of Drew v. Chase Bank is submitted. If we want anything additional, we will specifically let you know. Thank you very much. Thank you. This Court is adjourned for this morning. All rise.
judges: Benitez, McKeown, Smith